UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

UNITED STATES OF AMERICA

V.                                                              CRIMINAL NO. 3:19-CR-23-DPJ-FKB

SILVIA KRISTELL CUSTODIO-
MORALES

ORDER

Defendant Silvia Kristell Custodio-Morales has filed two motions [31, 39] seeking dismissal of the indictment against her. In basic terms, Defendant claims that she was denied due process when she was removed from the United States in 2010, so she cannot be charged with illegal re-entry in this matter. She also claims prosecutorial vindictiveness. When Defendant subpoenaed two ICE agents to testify at a previously set evidentiary hearing on her motions to dismiss, the Government filed a motion to quash [47] and an amended motion to quash [51]. This Order does not resolve these issues and instead advises the parties of the matters to be addressed at a non-evidentiary hearing on December 18, 2020.

I.      Background

On August 7, 2010, Custodio-Morales "presented a visa that did not belong to her when she attempted to gain entry into the United States" from Mexico. Def.'s Mot. [31] at 7. Border agents discovered her misrepresentation and found her inadmissible and subject to removal after an expedited removal proceeding. *See* Determination of Inadmissibility [31-2] at 1. On August 9, 2010, Custodio-Morales pleaded guilty to violating 8 U.S.C. § 1325(a)(3) and was sentenced to ten days in prison, after which she was removed. *See* J. [31-7] at 4. According to Defendant, the removal procedure violated her due-process rights because a low-level officer decided her case in an expedited proceeding.

Defendant returned to the United States after that—allegedly without first obtaining permission from the Attorney General of the United States or the Secretary of Homeland Security.  *See* Superseding Indictment [20] Cnt. 1.  According to the Government, Defendant worked here under an allegedly false identity until 2019, when she and hundreds of others were arrested by Immigration and Customs Enforcement (ICE) following large-scale raids at chicken-processing plants in rural Mississippi.

The original Indictment [1] charged Custodio-Morales on January 25, 2019, with being found in the United States after having been previously removed pursuant to law, thus violating 8 U.S.C. §§ 1326(a)(1) and (2).  She was granted bond on March 12, 2019, over the Government's objections.  One week later, on March 19, 2019, the Government obtained a superseding indictment [20] that added an identity-theft charge under 18 U.S.C. § 1028(a)(7).  Defendant says Count 1 must be dismissed because her 2010 removal was fundamentally unfair and that both counts should be dismissed for prosecutorial vindictiveness.

II.   Collateral Attack on 2010 Removal

According to Custodio-Morales, her removal cannot form the basis of her illegal re-entry charge under § 1326(a)(1), because the 2010 expedited removal proceeding violated her due-process rights and was prejudicial.

To begin, Custodio-Morales may collaterally attack the 2010 removal that forms the basis of her illegal re-entry charge in Count 1 of the Indictment.  In *United States v. Mendoza-Lopez*, the Supreme Court held "that a collateral challenge to the use of a deportation proceeding as an element of a criminal offense must be permitted where the deportation proceeding effectively eliminates the right of the alien to obtain judicial review."  481 U.S. 828, 839 (1987).

Congress took note, and "[i]n response to the Supreme Court's determination that imposition of criminal penalties based on a prior administrative proceeding violated due process unless there was '*some* meaningful review of the administrative proceeding,' Congress added § 1326(d)." *United States v. Gonzalez-Flores*, 804 F.3d 920, 926 (9th Cir. 2015) (quoting *Mendoza-Lopez*, 481 U.S. at 837). Under 1326(d), a defendant can challenge the validity of a prior deportation order if she "demonstrates that"

> (1) [she] exhausted any administrative remedies that may have been available to seek relief against the order;
>
> (2) the deportation proceedings at which the order was issued improperly deprived [her] of the opportunity of judicial review; and
>
> (3) the entry of the order was fundamentally unfair.

8 U.S.C. § 1326(d). Additionally, a defendant seeking dismissal of an indictment based on prior deportation proceedings must show "the procedural deficiencies caused [her] actual prejudice." *United States v. Lopez-Vasquez*, 227 F.3d 476, 483 (5th Cir. 2000). If the defendant "fails to satisfy any one of these prongs, then the court need not consider the other prongs." *United States v. Parrales-Guzman*, 922 F.3d 706, 707 (5th Cir. 2019).

The Court has reservations about Defendant's motion under these standards, but not for the reasons the Government asserts. According to the Government, Custodio-Morales failed to exhaust and therefore her motions fail at the first prong of the § 1326(d) test. But the argument is frankly hard to follow and seems at least questionable. As Defendant notes, the Fifth Circuit examined the limited opportunities to exhaust in *Valdiviez-Hernandez v. Holder*, 739 F.3d 184, 187 (5th Cir. 2013) (holding that "aliens subject to expedited removal do not appear before an IJ, nor can they appeal an adverse decision to the BIA" so absent an avenue to challenge legal conclusions, the removed alien does not fail to exhaust administrative remedies). The Government mentions *Valdiviez-Hernandez* in response but does not substantively address

3

Defendant's argument or any of the other cases she cited on the exhaustion issue. There may be more to the Government's argument than the Court has appreciated, so the parties are free to address exhaustion at the hearing.

The Court's bigger concern is that Custodio-Morales appears to have received all process she was due in 2010—an issue the Government never directly addresses. "In the exclusion or inadmissibility context, only the process afforded by the Congress and the Executive is required." *Lopez-Vasquez*, 227 F.3d at 484. "Federal regulations exist that set forth explicitly the procedures for the expedited removal of inadmissible aliens." *Id.* (citing 8 C.F.R. § 235.3). And where those procedures are followed, the removal does not violate due process and is not "fundamentally unfair." *Id.*

It is not apparent that Custodio-Morales is claiming the border officers failed to follow procedures. There is no dispute that she presented a fraudulent visa when stopped at the border in August 2010. That violated 8 U.S.C. § 1182(a)(6)(C)(i), which renders inadmissible "[a]ny alien who, by fraud or willfully misrepresenting a material fact, seeks to procure (or has sought to procure or has procured) a visa, other documentation, or admissions into the United States or other benefit provided under this chapter." 8 U.S.C. § 1182(a)(6)(C)(i).

And because she admittedly violated § 1182(a)(6)(C)(i), her case became subject to expedited review under 8 U.S.C. § 1225(b)(1)(A)(i), which states:

> If an immigration officer determines that an alien . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) . . . of this title, the officer shall order the alien removed from the United States without further hearing or review unless the alien indicates either an intention to apply for asylum under section 1158 of this title or a fear of persecution.

Custodio-Morales did not claim asylum or fear of prosecution, so there is no real argument that she was incorrectly subjected to expedited review.

Instead, she argues—and the Government does not dispute—that border officials have discretion under the Inspector's Field Manual to avoid expedited review by allowing voluntary departure, permitting withdrawal of the application for admission, or granting a regular immigration proceeding.  Def.'s Mot. [31] at 6; *see also id.* at 7 (discussing six factors to apply when exercising discretion to avoid expedited review).  She further contends—without real response from the Government—that she was a good candidate for one of these alternatives because she has a husband and children in the United States, has no criminal record, and had never voluntarily departed before.  She alternatively argues that based on these facts the immigration officer could have simply waived her inadmissibility.  *Id.* at 11.

For starters, the parties will need to address whether this discretion—and the six factors for exercising it—existed in the present context.  It seems that discretion to allow withdraw of the application would exist under 8 C.F.R. § 1235.4, which states that "[t]he Attorney General may, in his or her discretion, permit any alien applicant for admission to withdraw his or her application for admission in lieu of . . . expedited removal under section 235(b)(1) of the Act."  As for the six factors Defendant cited from the Field Manual, neither side presented the applicable copy, so the Court does not know the extent to which they may apply or whether other considerations exist.  To be clear, the Court has not taken a deep dive into this issue, primarily because the Government tacitly concedes it.  To avoid wasting resources, the Court will assume that discretion existed and that the six factors Defendant cites are applicable unless the Government informs the Court by December 16, 2020, that it opposes this argument.

That said, the applicable regulations state that "nothing in this section shall be construed to give an alien the right to withdraw his or her application for admission."  8 C.F.R. § 1235.4.  So even accepting Custodio-Morales's discretion argument, there was no right to the relief she

claims the officer should have extended. Moreover, she cites no authority suggesting that a failure to exercise discretion amounts to a due-process violation or otherwise renders the proceedings fundamentally unfair. Defendant is entitled to notice and an opportunity to address these issues at the hearing.

It also appears that cases applying the six factors Custodio-Morales cites address the issue under the prejudice prong. For example, in *United States v. Flores*, the Ninth Circuit noted the border officer's discretion to avoid expedited hearing and examined the same six factors Custodio-Morales cites. 901 F.3d 1150, 1162 (9th Cir. 2018), *cert. denied*, 140 S. Ct. 2676, 206 L. Ed. 2d 826 (2020). But the court did so to determine whether Flores was prejudiced during the immigration proceedings, noting that prejudice could be shown when there are "plausible grounds for relief from the removal order, that is, more than a theoretical possibility of relief." *Id.* (citation and quotation marks omitted); *see also United States v. Sanchez-Cervantes*, 2012 U.S. Dist. LEXIS 53870, at *26 (W.D. Tex. Apr. 17, 2012) (addressing factors under prejudice analysis). So, counsel should address whether the factors are relevant to the fundamental fairness of the expedited proceeding.

As to prejudice, Custodio-Morales says that if she "had been granted a voluntary departure and/or allowed to withdraw her application, she could have returned to Mexico and immediately applied for legal entry to the United States to join her husband, then a legal permanent resident, and their two American children." Def.'s Reply [35] at 5–6. But it appears that the prejudice argument is irrelevant if she received due process. *See Lopez-Vasquez*, 227 F.3d at 485 ("Because Lopez-Vasquez's removal proceedings did not violate due process, we need not address whether he suffered any prejudice or whether he was denied judicial review of

6

the hearing and order."). Again, she is entitled to notice and an opportunity to be heard on this point.

Finally, Custodio-Morales mentions that the immigration officer, Alejandro Morales, Jr., treated her less favorably than a similarly situated male who was given full immigration proceedings. *See* Def.'s Mem. [31] at 11. She therefore claims that this violated the Equal Protection Clause of the Fourteenth Amendment. Both Custodio-Morales and the comparator were apparently prosecuted, but he received more process than the statutory and regulatory minimums. Defendant cites no authority suggesting that such disparate treatment creates a basis for dismissing the indictment. Nor has she explained the standards the Court would apply to this argument. Because they were both prosecuted, it seems that equal-protection/selective-prosecution jurisprudence is not a clean fit. And under any standard, it seems that more evidence would be necessary to determine whether a valid comparator exists. That said, the Government never addresses the argument, so the parties should be prepared to make their arguments at the hearing.

If either side wishes to support their arguments with additional authority, they must email it to the Court and counsel opposite no later than December 16.

III.     Motions to Quash

That leaves the motions to quash. The parties have now resolved the document-production issues, so the remaining question is whether two agents should be compelled to appear and provide testimony at the yet-to-be-set evidentiary hearing. The Court will hear argument regarding the two motions to quash the witness subpoenas on December 18. As with the other issues, the parties may provide supplemental authority by email no later than December 16.

**SO ORDERED AND ADJUDGED** this the 11th day of December, 2020.

                                                s/ *Daniel P. Jordan III*
                                                CHIEF UNITED STATES DISTRICT JUDGE